75432. HENRY et al. v. DAIRYLAND INSURANCE COMPANY.
(366 SE2d 799)

McMURRAY, Presiding Judge.

Dairyland Insurance Company (Dairyland) brought this declaratory judgment action against Kenneth E. Henry (defendant) and others seeking a determination of its obligations as the purported liability insurer of defendant's 1980 Ford Fairmont automobile.

Upon Dairyland's motion for summary judgment, the following uncontradicted evidence was adduced: Elijah H. Jordan owned and operated Main Street Insurance Company (Main Street), an independent insurance agency representing various insurance companies, including Dairyland.[1] Dairyland mailed to Main Street a letter dated July 22, 1983, which informed Main Street that its "privileges of writing insurance for Dairyland . . . are withdrawn effective 7/25/83."

In 1983 defendant went to Main Street and discussed with one of Main Street's employees the possibility of obtaining insurance for his vehicles. This inquiry resulted in defendant obtaining insurance for his "68 Pontiac Firebird" and his "80 Ford Fairmont" automobiles through Universal Security Insurance Company (Universal). This coverage expired on August 17, 1984, and defendant was informed by one of Main Street's employees that Universal's renewal premium would be higher. Defendant then requested to be placed with another insurance carrier and, in response, Tina Reynolds, one of Main Street's employees, gave defendant a "temporary" insurance identification card entitled, "Georgia Liability Insurance Card," which indicated

---

[1] Jordan closed Main Street in June 1985 and he returned his Georgia license as an agent authorized to write health, accident and liability insurance to the Georgia Insurance Commissioner. Sometime in 1986 Jordan's Main Street office was "ransacked" and many of his business records were taken.

that defendant's "68 Pont" motor vehicle was insured with "Early American Ins" from "10/5/84" through "4/5/85." Defendant gave Ms. Reynolds $297 and she gave defendant a receipt which reflected the amount defendant paid for "2 cars full coverage liab." Defendant was informed that the temporary insurance identification card was evidence that his vehicles were insured and that his insurance policy would be mailed to him.

After defendant failed to receive an insurance policy and after defendant made several inquiries of Main Street's employees as to the reason for the delay in receiving his policy, defendant went to Main Street and Tina Reynolds offered to place defendant with another insurance company and give defendant credit for the $297 he paid for the "Early American Ins" coverage. Defendant accepted and Ms. Reynolds prepared another "temporary" insurance identification card. This card indicated that defendant's "80 Ford" automobile was insured with "Dairyland Insurance" from "3/28/85" through "9/28/85." Later, defendant contacted someone at Main Street and he was informed that his insurance policy would be sent to him via mail.

Defendant never received a Dairyland automobile liability insurance policy, his 1980 Ford Fairmont vehicle was involved in a collision on May 4, 1985, and defendant claimed coverage from Dairyland.

Dairyland never received an insurance application on behalf of defendant. Nor did Dairyland receive a premium payment from defendant or notice of defendant's claim for coverage until after the May 4 collision. One of Dairyland's employees contacted defendant after the collision and informed defendant that Dairyland had no record of insurance coverage on defendant's vehicle.

In opposition, defendant filed the deposition of Elijah H. Jordan, the deposition of Willie A. Hines, a/k/a "Bill Hines" and affidavits of persons who procured Dairyland Insurance through Main Street at or about the time defendant received the Dairyland "temporary" insurance identification card from Main Street.

More specifically, two of Main Street's former patrons deposed that they received Dairyland automobile insurance through Main Street at a time contemporaneous with defendant's receipt of the "Dairyland Insurance" identification card. These affiants also deposed that they were subsequently billed for their Dairyland insurance through "First City General Agency" (First City) located at "3835 Flatshoals Road, Decatur, Georgia."

Defendant offered into evidence through Hines' deposition a Dairyland insurance agency application which indicates that "Bill Hines" is the only authorized insurance agent to solicit Dairyland insurance, d/b/a First City. Hines testified that he is a licensed insurance agent in Georgia; that he has never sold insurance and that he is acquainted with Elijah H. Jordan but that he never authorized Jor-

dan nor any other person or agency to use his name or his Georgia insurance agent's license number to obtain the right to solicit Dairyland insurance.

Jordan testified in his deposition that he operated an independent insurance agency d/b/a First Security Insurance Agency "on Flat Shoals [Road] in Decatur." Jordan also testified that Main Street's relationship with Dairyland was " 'on again, off again' " and that he had authority to sell Dairyland insurance in March 1985. However, upon cross-examination Jordan admitted that no such authority existed when Main Street issued defendant the "temporary" identification card which indicated that "Dairyland Insurance" covered defendant's "80 Ford" automobile.

From the evidence filed in opposition to Dairyland's motion for summary judgment, defendant argued that a jury question as to whether a principal/agent relationship existed between Dairyland and Jordan, d/b/a Main Street. Defendant also argued that Dairyland is estopped in denying liability based on the evidence showing Jordan's activities selling Dairyland insurance through First City and Main Street's employees' representations. The trial court rejected these contentions and declared that "Dairyland has no duty to defend any party in any subsequent proceedings arising out of these events." This appeal followed. *Held*:

Defendant re-asserts his claim of estoppel arguing that "Dairyland, by its negligent acts, created a situation which allowed Main Street and Elijah [H.] Jordan, its owner, to commit the error, misrepresentation or fraudulent act which caused [defendant] the harm complained of."

"In terms of estoppel, the general rule is that an insurance company will be estopped to deny that a certain person is its agent or possesses the authority he assumes to exercise, where the insurance company knowingly causes or permits him so to act as to justify a third person of ordinarily careful and prudent business habits to believe that he possesses the authority exercised." 43 AmJur2d 201, Ins., § 120. Contrary to defendant's assertions, we find no evidence that Dairyland indicated to defendant or led him to believe that Jordan, d/b/a Main Street, had authority to act for Dairyland. In fact, in his deposition defendant testified that he was not directed to Main Street through an advertisement or recommendation which indicated that Main Street was an agent for any particular insurance carrier and that he perceived nothing while at Jordan's Main Street office which indicated that Main Street was an agent for Dairyland. Defendant further testified that he did not approach Main Street as an agent for any particular insurance carrier and that he did not request any of Main Street's employees to procure insurance coverage for his vehicles through a specific insurance company. Defendant testified that

his primary objective with Main Street was to obtain the most favorable insurance premium for his vehicles, without regard to the insurance carrier.

" '(W)here the only evidence that a person is an agent of another party is the mere assumption that such agency existed, or an inference drawn from the actions of that person that he was an agent of another party, such evidence has no probative value and is insufficient to authorize a finding that such an agency exists.' *Shivers v. Barton & Ludwig, Inc.*, 164 Ga. App. 490, 491 (296 SE2d 749) (1982)." *Wiggins v. Home Owners &c. Council*, 168 Ga. App. 777, 778 (310 SE2d 554). In the case sub judice, the only evidence adduced to demonstrate an agency relationship between Dairyland and Main Street consisted of defendant's assumption and the representations of Main Street's employees. There simply was no showing of Dairyland's conduct, representations, course of dealings or knowledge of the material facts which caused defendant's failure to procure Dairyland automobile liability insurance coverage. Consequently, since the undisputed evidence showed that defendant had no contract of insurance with Dairyland and since there was insufficient evidence to prove agency, the trial court properly granted Dairyland's motion for summary judgment.

*Judgment affirmed. Sognier and Beasley, JJ., concur.*

DECIDED FEBRUARY 24, 1988 —
REHEARING DENIED MARCH 8, 1988 —

*Pearl L. Henry*, for appellants.
*Richard B. Eason, Jr.*, for appellee.